## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JENNIFER RAMOS,

     Plaintiff,

     v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION

     Defendant.

No. 3:15-cv-1368 (MPS)

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This is an administrative appeal following the denial of the plaintiff, Jennifer Ramos's,

application for disability insurance benefits. The appeal is brought pursuant to 42 U.S.C. §§ 405(g)

and 1383(c)(3).[1] Ms. Ramos now moves for an order reversing the decision of the Commissioner

of the Social Security Administration ("Commissioner").  In the alternative, Ms. Ramos seeks an

order remanding her case for a rehearing.  The Commissioner, in turn, has moved for an order

affirming the decision.

Ms. Ramos argues, among other things, that the Administrative Law Judge ("ALJ") erred

in concluding that (1) Ms. Ramos's medical conditions did not meet or medically equal a listed

---

[1]  Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]."  42 U.S.C. § 405(b)(1).  The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs").  *See* 20 C.F.R. §§ 404.929 *et seq.* Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council.  *See* 20 C.F.R. §§ 404.967 *et seq.*  If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States District Court. The Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

impairment, which would have made her *per se* disabled; (2) that the ALJ's finding that Ms. Ramos could perform jobs in the national economy was not supported by substantial evidence; and (3) that the ALJ did not properly apply the treating physician rule. Because I agree that the ALJ erred in determining the jobs that Ms. Ramos could perform in the national economy and misapplied the treating physician rule with regard to her treating psychiatrist, the case is REMANDED. I do not reach Ms. Ramos's remaining arguments urging reversal or remand.

## **BACKGROUND**

On August 22, 2012, Ms. Ramos filed an application for disability benefits for an alleged disability. (Joint Statement of Facts, ECF No. 14-2 at 1.) On January 22, 2013, a disability adjudicator in the Social Security Administration denied her initial request for disability benefits and thereafter denied her request for reconsideration. (*Id.*) On May 8, 2014, Ms. Ramos appeared with counsel for a hearing before ALJ I.K. Harrington. (*Id.*)  On July 23, 2014, the ALJ issued a decision denying benefits. (*Id.*)

The ALJ found that Ms. Ramos was a 34-year-old woman with severe impairments of degenerative disc disease, arthritis, psoriasis, asthma, and obesity. (ALJ Decision, Tr. 18, 28.) The ALJ rejected the allegations that Ms. Ramos also had severe impairments of hyperlipidemia, glucose intolerance, Vitamin D deficiency, migraines, sleep apnea, depression, heroin dependence, and opioid dependence. (*Id.* at 19.) Next, the ALJ determined that Ms. Ramos did not have a listed impairment, and had the following Residual Functional Capacity ("RFC"):

> to perform "light work" as defined in 20 C.F.R. § 416.967(b), except with sitting up to six hours, standing and walking up to four hours; frequent climbing ramps and stairs, and balancing; occasional stooping, kneeling, crouching[,] crawling, climbing ladders, ropes and scaffolding; frequent reaching both overhead and forward with the right upper extremity, which is the dominant side and frequent fingering and handling in both upper extremities, avoid concentrated exposure to extreme cold, vibration and occasional exposure to fumes, odors, dusts, gases and poor ventilation, and is capable of simple routine

tasks involving no more than simple, short instructions and occasional interaction with general public, supervisors and coworkers.

(*Id.* at 21, 23.) Finally, the ALJ found that although Ms. Ramos had no past relevant work, there were jobs that exist in significant numbers in the national economy that Ms. Ramos could perform based on her age, RFC, work experience, and limited education, and therefore she was not disabled within the meaning of the Social Security Act. (*Id.* at 28-29.)

On July 15, 2015, the appeals council denied Ms. Ramos's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Joint Statement of Facts, ECF No. 14-2 at 1.) This appeal followed. Specific facts and portions of the ALJ's decision will be discussed below as necessary.

## STANDARD

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means... [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment...." 42 U.S.C. § 423(d)(1).  To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.

The five steps are as follows: (1) The Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4). If the claimant has one of these enumerated impairments, the Commissioner will automatically consider that claimant disabled, without

considering vocational factors such as age, education, and work experience. *Id.* (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work the claimant could perform. *Id.* To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot... engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner bears the burden of proof on the fifth step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4).

"A district court reviewing a final ... decision pursuant to … 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, a district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health & Human Servs.,* 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the correct legal principles were applied in reaching the decision, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)

(citation and quotation marks omitted).  Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

## DISCUSSION

### I.  Listed Impairment

I must first decide whether substantial evidence supported the determination that Ms Ramos's condition did not meet or medically equal a listed impairment, which would have made her disabled *per se* at step three of the five-step evaluation process. 20 C.F.R. § 404.1520(a)(4)(iii).

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). And "[f]or a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531 (quoting 20 C.F.R. § 416.926(a), footnote omitted).

Ms. Ramos specifically claims that she satisfied the criteria of Listing 14.09D,[2] which describes:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living.
> 2. Limitation in maintaining social functioning.
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

---

[2] The ALJ in fact did not mention Listing 14.90D, instead considering Listings 1.04, 3.03, and 8.04, in determining that Ms. Ramos's condition did not meet or medically equal a listed impairment. (ALJ Decision, Tr. 21-22.) Ms. Ramos does not challenge the decision on these other listings in her motion. (ECF No. 14-1 at 16-18.)

20 C.F.R. § Pt. 404, Subpt. P, App. 1, 14.09D. Ms. Ramos explains why she believes the ALJ erred in concluding that her limitations in "activities of daily living," "social functioning," and "concentration, persistence of pace" were mild, rather than marked. (ECF No. 14-1 at 17-18.) However, she apparently ignores the other requirement of Listing 14.09D, namely that she must have "*at least two* of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 14.09D (emphasis added). Ms. Ramos, who bears the burden of showing that an impairment meets the criteria, *Sullivan*, 493 U.S. at 531, has failed to point to evidence that would establish two of those symptoms or signs.

There is therefore no basis for overturning the ALJ's determination on listed impairments.

## II.    Work in the National Economy

Ms. Ramos also argues that the ALJ erred in determining that there were jobs that exist in significant numbers in the national economy that she could perform based on her RFC, age, and work experience. Relying on the testimony of a vocational expert, the ALJ found that Ms. Ramos could perform the jobs of "hand cutter," with 200 jobs in Connecticut and 18,000 nationally, "mail clerk," with 2,319 jobs in Connecticut and 200,000 nationally, and "table worker," with 100 jobs in Connecticut and 4,000 nationally.

At step five of the five-step evaluation process described above, if a claimant does not have past relevant work, "the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform.  An ALJ may make this determination either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumptions upon which the

vocational expert based his opinion," and the hypothetical "accurately reflect[s] the limitations and capabilities of the claimant involved." *Id.* (citation, quotation marks, and alteration omitted).

The portion of the hearing transcript devoted to the vocational expert's responses to hypothetical questions posed by the ALJ is confusing, and does not provide substantial evidence about which jobs Ms. Ramos could perform under a particular set of assumptions. The ALJ presented the vocational expert with four hypotheticals. In the first hypothetical, the ALJ described the core of what she would ultimately find to be Ms. Ramos's RFC. (Tr. 74.) The vocational expert stated that such an individual could be a cashier, a courier, a fast-food worker, or do light housekeeping. (Tr. 75.) Then, in the second hypothetical, the ALJ asked the vocational expert to assume the "same other limitations addressed in hypothetical one," but "[i]n addition, would also have frequent fingering or handling in both upper extremities," and "capable of light work with sitting up to six hours, standing and walking four hours." (*Id.*) To that, the vocational expert responded that such an individual could do "sedentary, unskilled" jobs, and could be a "call-out operator," "addresser," or "surveillance systems monitor." (Tr. 76.) In the third hypothetical, the ALJ instructed the vocational expert to "assume such individual has the same limitations as in hypotheticals one and two, so you could apply these mental limitations…Such an individual is capable [of] simple, routine tasks involving no more than simple, short instructions; occasional interaction with general public, supervisors, and co-workers." (Tr. 76-77.) The vocational expert responded, "[s]he could not be a cashier…. She could not be a call-out operator… She cannot be a fast-food worker…she cannot do the courier either. *But she could be the light—okay, so the first hypothetical; she could still be a light housekeeper*." (Tr. 77 (emphasis added).) And "[t]he second hypothetical, she could be an addresser and surveillance systems monitor." (Tr. 77-78.) When asked about other jobs, the vocational expert testified, "*[r]eplacement jobs for number one* would

be a hand cutter…. And another job would be a mail clerk….*In terms of the sedentary, unskilled jobs* I mentioned two. One more would be… a table worker." (Tr. 78 (emphasis added).)

The italicized portions of the vocational expert's responses quoted above raise questions about whether the vocational expert genuinely understood that he was being asked to combine all of the assumptions from the first three hypotheticals—which together comprised the RFC determined by the ALJ—in identifying specific jobs. For example, a plausible reading of the vocational expert's identification of two of the three positions cited by the ALJ, hand cutter and mail clerk, is that Ms. Ramos could perform those positions under the assumptions in hypothetical one plus those in hypothetical three—but *not* when those in hypothetical two, the sitting and standing limitations, were added. *See* Tr. at 78 ("Replacement jobs for number one would be a hand cutter… and another job would be a mail clerk… In terms of the sedentary, unskilled jobs, I mentioned two [*i.e.*, addresser and surveillance systems monitor]. One more would be… a table worker.") But the ALJ found that Ms. Ramos's RFC included the limitations set forth in all three hypotheticals, which included those in number two—"sitting up to six hours, standing and walking up to four hours." (ALJ Decision, Tr. 23.) It is not clear that the vocational expert agreed that such a person could be a hand cutter or a mail clerk. Without clear testimony on this point from the vocational expert, I cannot find that there is substantial evidence to support the ALJ's conclusion that Ms. Ramos could perform the jobs of hand cutter and mail clerk.[3] *See also Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015) ("[A] hypothetical question that

---

[3] It appears from the transcript that the vocational expert testified that a person with the limitations in all three hypotheticals would be able to perform the jobs of addresser and surveillance systems monitor. But the ALJ did not cite those jobs in the opinion, and courts cannot supply a new or different rationale for an administrative agency's decision. *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94-95 (1943).

does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.")

As for the remaining job of table worker, the question is whether 100 jobs in Connecticut and 4,000 nationally constitutes "significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2). "Neither the Social Security Act, nor the Commissioner's Regulations or Rulings provide a definition for a 'significant' number of jobs." *Koutrakos v. Colvin*, 2015 WL 1190100, at *21 (D. Conn. Mar. 16, 2015). While "[c]ourts have held that a 'significant number' of jobs is 'fairly minimal,'" *Hamilton*, 105 F. Supp. at 229 (citation omitted), they have nonetheless drawn some limits. *See, e.g. Beltran v. Astrue*, 700 F.3d 386, 390 (9th Cir. 2012) ("[I]t would be unconscionable to expect Beltran to find even one of 135 jobs as a surveillance system monitor in her region or one of 1,680 jobs scattered across several regions."); *Beeler v. Bowen*, 833 F.2d 124, 128 n.3 (8th Cir. 1987) (50 jobs in the state and about 5,000 nationally was not significant); *Hamilton*, 105 F. Supp. at 229 ("[T]he ALJ has not sufficiently shown that plaintiff can perform other work in the national economy" given a total of 5,160 ampoule sealer, circuit board assembler, and table worker jobs nationally and 13 regionally); *Robinson v. Astrue*, 2009 WL 4722256, at *2 (E.D.N.Y. Dec. 9, 2009) (directing ALJ to consider, on remand, whether "just 200 jobs locally and 3,000 nationally, would qualify as significant under 20 C.F.R. § 416.960(c)."); *Hodges v. Sec. of HHS*, 1989 WL 281926, at *5 (N.D.N.Y. Nov. 15, 1989) ("30,000 jobs in the national economy by itself is not very substantial."); *Leonard v. Heckler*, 582 F. Supp. 389, 391 (M.D. Pa. 1983) (4,000 to 5,000 jobs nationally "does not support the conclusion that the plaintiff is able to engage in work which exists to any significant degree in the national economy…. the number of jobs cited by [the vocational expert] is a minuscule fraction of the number of jobs existing in the national economy."); *c.f. Dugan v. Soc. Sec. Admin. Comm'r*,

9

501 F. App'x 24, 25 (2d Cir. 2012) (summary order) (affirming in a case where the vocational expert testified that there were two jobs with a total of 600 positions in Vermont and 344,000 nationwide). Guided by these cases, I remand to the ALJ to consider whether 100 jobs in the region and 4,000 nationally is a "significant number."

Based on the existing record, I find that the Commissioner has not shown that plaintiff can perform other work in the national economy.

### III.    Treating Physician Rule

Next, Ms. Ramos argues that the ALJ erred by giving "no weight to the opinions in the mental residual capacity assessment from the claimant's treating psychiatrist, Dr. Richardson," in determining Ms. Ramos's impairments and RFC. (ALJ Decision, Tr. 27.)

Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(c)(2)). "The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." *Schrack v. Astrue*, 608 F. Supp. 2d 297, 301 (D. Conn. 2009). The Second Circuit has made clear that:

> [E]ven when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining how much weight the opinion should receive. To override the opinion of the treating physician… the ALJ must explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.

*Greek v. Colvin,* 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotation marks, and alterations omitted). "The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.*

In this case, the ALJ gave "no weight" to treating psychiatrist Dr. Richardson's opinion that Ms. Ramos was markedly impaired in twelve areas of functioning and moderately impaired in four areas of functioning. (ALJ Decision, Tr. 27; Joint Statement of Facts, ECF No. 14-2 at 3.) Dr. Richardson stated, among other things, that Ms. Ramos was markedly impaired in "the ability to maintain attention and concentration for extended periods" and "the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace with valid and reasonable number and length of rest periods." (Tr. 387-38.) The ALJ determined that Dr. Richardson's opinion was "without substantial support from other evidence of record," "inconsistent" with other medical evidence, and that the "checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations, without any rational for those conclusions." (ALJ Decision, Tr. 27-28.)

First, I conclude that the ALJ's decision not to give controlling weight to Dr. Richardson's opinions was supported by substantial evidence, because Dr. Richardson's opinion was "not consistent with the opinions of other medical experts." *Mariani v. Colvin*, 567 F. App'x 8, 10 (2d Cir. 2014). *See also Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) ("[T]he opinion of the treating physician is not afforded controlling weight where… the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."). In particular, an examining psychologist, Dr. Muraoka, directly contradicted Dr. Richardson when she stated, "[t]here is no evidence of limitation in the

claimant's maintaining attention and concentration." (Tr. 596.) Similarly, an agency physician found that Ms. Ramos was "attentive and well-focused" and that "current limitations due to psych [symptoms] are not severe." (Tr. 89.)  *See Schlichting v. Astrue*, 11 F. Supp. 3d 190, 204 (N.D.N.Y. 2012) ("It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.").

   "Nevertheless, even when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors in determining *how much weight* the opinion should receive." *Greek*, 802 F.3d at 375 (emphasis added). While the Second Circuit's earlier opinions were more relaxed in terms of how the ALJ's reviewed those factors,[4] *Greek* makes clear that "the ALJ must explicitly consider" each of them. 802 F.3d at 375. For example, citing *Greek*, a court in this District remanded a case even though the ALJ had determined that the treating physician's opinion was inconsistent and unsupported by other medical evidence. *Berg v. Colvin*, 2016 WL 53823, at *7-8 (D. Conn. Jan. 5, 2016). The court explained:

> [T]he Second Circuit has provided a list of factors that an ALJ must *explicitly consider* before discounting a treating physician's opinion. The ALJ did not explicitly consider the factors enumerated in the regulations and identified by the Circuit in weighing Dr. Blatter's opinions. There is no mention of the frequency or duration of the treatment relationship, any medical evidence that does support Dr. Blatter's opinion, or his specialization…. Mere mention of the fact that an opinion comes from a treating psychiatrist is *not* a comprehensive explanation of the reasons for the assignment of weight and does not constitute explicit consideration of the required factors. Because it is not clear from the ALJ's opinion that she considered all of the factors enumerated in the regulations, the ALJ failed to give 'good reasons' for according little weight, and remand is warranted to ensure that all of the enumerated factors were given appropriate consideration.

---

[4] In 2013, for example, the Second Circuit noted that "the ALJ's failure to review explicitly each factor provided in 20 C.F.R. § 404.1527(c)" was not grounds for remand, because "[w]e require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear." *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order).

*Berg*, 2016 WL 53823, at *7 (internal citation omitted, emphasis in original). Similarly, a court in the Southern District of New York, citing *Greek*, remanded a case because "the ALJ only cited the length of the treatment relationship at the time the opinion was produced and its consistency with records from the same day." *Burgess v. Colvin*, 2016 WL 7339925, at *13 (S.D.N.Y. Dec. 19, 2016). The court explained that the ALJ erred because she "did not consider factors that weigh in favor of assigning greater weight to Dr. Sharma's opinion, including the continuing relationship between Burgess and Dr. Sharma, Dr. Sharma's psychiatric specialty, or other evidence on the record that supported Dr. Sharma's opinion." *Id.*

Here, just as in *Berg* and *Burgess*, the ALJ made the decision to give no weight to Dr. Richardson's opinion without explicitly considering all of the factors required by *Greek* and 20 C.F.R. § 404.1527(c). The ALJ failed to "explicitly consider" "the frequency, length, nature, and extent" of Dr. Richardson's treatment. *Greek,* 802 F.3d at 375. Dr. Richardson's opinion was based on approximately six months of treatment as a psychiatric specialist. (Tr. 849-56.) In fact, Dr. Richardson was the *only* physician who treated Ms. Ramos for psychiatric problems who was cited in the ALJ's decision. Also, while the ALJ stated that there was no rationale for the checklist form used by Dr. Richardson, and a "standardized form… is only marginally useful for purposes of creating a meaningful and reviewable factual record," *Halloran*, 362 F.3d at 31, the ALJ did assign "greater weight" to the standardized checklist used by a different doctor, Dr. Cordero-Ferrer. (ALJ Decision, Tr. 27; Tr. 842.) Further, the ALJ failed to consider the rationale and evidence that did support the checklist, such as Dr. Richardson's accompanying explanation that the impairments were a result of Ms. Ramos's "major depression, social anxiety," his treatment notes, and the overall psychiatrist-patient relationship between Dr. Richardson and Ms. Ramos. (Tr. 839, 849 (treatment note from 5/2/14 noting that Ms. Ramos "feels irritable, anxious, has a difficult time

interacting with coworkers and the public in addition to her physical pain… She reports sleeping most of the day…."), 850-56.) The ALJ found that Dr. Richardson's opinion was "inconsistent" and "not supported by any objective evidence," noting the contrary opinions of examining psychiatrist Dr. Muraoka and a state agency physician, the "global assessment of functioning" score, and Dr. Richardson's own treatment note dated December 5, 2013, which stated that Ms. Ramos had "not felt depressed for at least a year." (ALJ Decision, Tr. 21, 27-28; Tr. 855.) But the ALJ failed to also consider evidence *consistent* with Dr. Richardson's opinion, such as the opinion of examining physician Dr. Klufas, who found that Ms. Ramos had "significant anxiety, depression," and Ms. Ramos's own testimony. (Tr. 543.)

This error was not harmless. The vocational expert testified that a person who was "only occasionally able to maintain attention and concentration for extended periods of time" or who required "rest periods of up to eight a day" would be unemployable. (Tr. 78-79, 81.) Had the ALJ given more weight to Dr. Richardson's opinions regarding Ms. Ramos's concentration and need for rest periods, she could have concluded that Ms. Ramos could not "make an adjustment to other work" based on her RFC, age, education, and work experience and was therefore disabled. 20 CFR § 404.1520 (a)(4)(v), (g). Remand is therefore appropriate.

**IV.    Remaining Grounds**

In addition, Ms. Ramos maintains that the ALJ erred in weighing other medical evidence and evaluating her credibility, among other things. I need not reach these issues as I have already determined that the case must be remanded for the reasons discussed above. I express no view on any other issues except those expressly addressed by this ruling.

## <u>CONCLUSION</u>

Ms. Ramos's motion for an order reversing or remanding the Commissioner's decision (ECF No. 14) is GRANTED, and the Commissioner's motion to affirm that decision (ECF No. 17) is DENIED. The case is hereby REMANDED. Nothing in this opinion is intended to suggest whether or not the ALJ should find Ms. Ramos to be disabled.

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:      Hartford, Connecticut
            March 3, 2017